**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHENANGO LLC fka SHENANGO INCORPORATED, | ) ) ) | No. 2:21-cv-181-RJC |
| Plaintiff, | ) ) ) | Judge Robert J. Colville |
| vs. | ) ) | |
| ASHLAND LLC and INEOS COMPOSITES US LLC, | ) ) ) | |
| Defendants. | ) ) | |
| ASHLAND LLC and INEOS COMPOSITES US LLC, | ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| CALGON CARBON CORPORATION, | ) ) | |
| Third Party Defendant. | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

Robert J. Colville, United States District Judge.

     In this action for unpaid sewage disposal fees, Defendants Ashland LLC and INEOS Composites LLC seek to implead Calgon Carbon Corporation. In their First Amended Third-Party Complaint (ECF No. 41) ("TPC"), Ashland and INEOS allege that they are the third-party beneficiaries of contracts between Calgon and the Plaintiff, Shenango LLC, and that those contracts render Calgon liable to them for any damages they must pay to Shenango. Failing that, Ashland and INEOS argue that Calgon is liable to them for unjust enrichment. Calgon's motion to dismiss is now pending before the court. *See* Third-Party Def. Calgon Carbon Corp.'s Mot. to

Dismiss First Am. Third-Party Compl. (ECF No. 43).  As discussed below, that motion will be granted in part and denied in part.

## I.      BACKGROUND

Shenango owns and operates a sewage lift station located on its property in Neville Township, Pennsylvania.  TPC ¶¶ 9, 20(a).  Shenango acquired that property when United States Steel Corporation subdivided its land.  *Id.* ¶ 20(b).  After that acquisition, Shenango and US Steel entered into two agreements (termed the "SS Easement" and the "SS Agreement").  *Id.* ¶¶ 20(c), 20(f).  Under the SS Easement, Shenango agreed to convey US Steel's sanitary sewage from its facility to Shenango's lift station.  *Id.* ¶ 20(d).  In exchange, US Steel would bear its reasonable share of the cost of disposal of its sanitary sewage.  *Id.* ¶ 20(e).  Under the SS Agreement, Shenango agreed to dispose of US Steel's sanitary sewage at a dollar rate per employee working at US Steel's facility, provided that the rate could be adjusted over time.  *Id.* ¶ 20(h).  Ashland became a successor to the SS Easement and the SS Agreement when it purchased a subdivision of US Steel's property, and INEOS likewise became a successor to Ashland when it acquired a portion of Ashland's business.  *Id.* ¶¶ 20(b), 20(i).

Shenango filed a complaint in the Allegheny Court of Common Pleas alleging that Ashland and INEOS had been conveying "massive amounts of processed wastewater" to Shenango's lift station for disposal.  Notice of Removal, Ex. A at 16–27 (ECF No. 1) ("Compl.").  Neville Township was invoicing Shenango for the total volume of waste transferred by Shenango, but—under the SS Easement and SS Agreement—Shenango was passing on to Ashland only the portion of that invoice that it understood to be Ashland's share of sanitary sewage.  Compl. ¶¶ 1–2.  By doing so, Shenango subsidized Ashland's disposal of processed wastewater.  *Id.* ¶ 2.  Shenango contends that Ashland breached the SS Easement and SS Agreement by systematically underpaying for the disposal of processed wastewater through Shenango's lift station.  *Id.* ¶¶ 75–

80.  Shenango also asserts a claim for unjust enrichment.  *Id.* ¶¶ 81–85.  Ashland and INEOS

removed the case to this court, invoking this Court's jurisdiction under 28 U.S.C. § 1332.  *See*

Notice of Removal ¶ 2 (ECF No. 1).

Calgon owns a nearby facility connected to the same sewage system.  TPC ¶¶ 20(j)–(k),

33.  Like Ashland, it disposes of its sanitary sewage using Shenango's lift station.  *Id.*  However,

Calgon is not a party to the SS Easement or the SS Agreement; instead, it has various other

agreements with Shenango.  *Id.* ¶ 24.  Nonetheless, Ashland and INEOS assert "upon information

and belief" that Calgon "operate[s] under the payment-related terms of the SS Easement and SS

Agreement."  TPC ¶ 32.

Calgon has a longstanding agreement with Shenango delineating the rights and

responsibilities of landowners and owners of utility lines at their facilities.  *See* TPC, Ex. A

("Agreement").  That agreement—the "Calgon Agreement"—was made on September 3, 1970,

between Shenango, Calgon, and the Pittsburgh and Ohio Valley Railway Company.  Agreement

at 11.  In the preamble, the parties expressed their "desire to define the ownership, maintenance,

and control of various utility lines . . . involved in their adjoining plaint or facilities at Neville

Island, Neville Township, Allegheny County, Pennsylvania."  *Id.*  Section 1 identifies the various

relevant "utility systems"—which are detailed in separate drawings on numbered sheets—

including a "Sanitary Sewer System."  *Id.* § 1.

The Calgon Agreement requires the parties to grant easements to the owners of utility lines

where the lines cross land owned by others:

> [A]s incident to such ownership as is herein established, the owner
> of a utility line shall have such easements or rights of access as may
> be reasonably necessary for inspecting, maintaining, altering,
> repairing, renewing, or removal of such utility line, or the reading of
> meters, to the extent that the other parties hereto can grant such
> easements or rights of access.

*Id.* § 3.

The Calgon Agreement also creates corresponding rights and obligations for the owners of land and the owners of utility lines.  Section 4 of the Agreement permits an owner of land "over, on, or under which a utility owned by one of the parties . . . is located may change the location of such utility line, together with its appurtenant easement, upon giving 30 days' written notice to the owner of such utility line."  *Id.* § 4.  "[T]he land owner shall bear the expense of relocating" the line, and the relocation "will be allowed by the owner of the utility concerned unless such change would substantially impair the efficiency or effectiveness of the service rendered by such utility line to its owner."  *Id.*  Section 5 of the Agreement further provides that "[u]pon abandonment, a utility line situated on or above the ground level shall be removed by the line's owner promptly after 30 days' written notice to the owner of the land unless the latter shall within such period purchase the abandoned line at its then book value."  *Id.*

Central to this action, the Calgon Agreement includes two separate sections providing for indemnification.  Section 6 creates a right to indemnification for the owners of utility lines whose lines cross another's' land:

> Each party as a landowner shall provide reasonable protection for any utility lines owned by others over, on, or under its land and shall not permit uncontrolled access to the utilities by third parties without consent of [sic] utility owner.  The landowner shall indemnify the owner of a utility line against liability or loss, including personal injury claims, damage to the line or other property, or loss of production, resulting from damage to the line caused by negligence of the landowner or activities of its independent contractors.

*Id.* § 6.  And Section 7 creates a right to indemnification for the owners of land crossed by utility lines:

> The owner of a utility line shall use reasonable care to keep such lines in a safe condition and shall indemnify the owner of the land

4

> against liability or loss, including personal injury claims, damage to
> property, or loss of production, resulting from failure of the owner
> of the utility line to maintain such safe condition or to comply with
> any pertinent rules and regulations published and accepted by the
> parties hereto.

*Id.* § 7.

Lastly, the Calgon Agreement includes an arbitration clause.  Section 8 requires the parties

to the Calgon Agreement to submit their disputes over that agreement for resolution in arbitration:

> In the event any dispute on the application or interpretation of this
> agreement cannot be resolved within sixty days after written notice
> by one party to the other or others involved in such dispute, the same
> shall be finally settled in accordance with the rules of the American
> Arbitration Association then obtaining.

*Id.* § 8.

Ashland and INEOS filed a Third-Party Complaint against Calgon asserting claims for

breach of contract and contractual indemnity as the third-party beneficiaries of the Calgon

Agreement and for unjust enrichment.  They allege that their sewage system is interconnected with

Calgon's, that the contents of the systems are commingled before they reach Shenango's lift

station, and that some or all the unpaid fees Shenango seeks from Ashland and INEOS may be

attributable to Calgon.  TPC ¶¶ 33, 47–52.  They further allege that Shenango installed flow meters

in Calgon's sewer lines—over Calgon's objections— to measure the flow into the lift station, but

that those flow meters "were believed to be malfunctioning or otherwise not properly reading the

accurate flow rate to the lift station at issue."  *Id.* ¶¶ 35–38.  Shenango and Calgon settled claims

for unpaid sewage fees in May 2019.  *Id.* ¶ 39.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss for Lack of Subject-Matter Jurisdiction

A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil

Procedure 12(b)(1) challenges the "court's 'very power to hear the case.'"  *Petruska v. Gannon*

5

*Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  The party asserting the existence of federal jurisdiction bears the burden of proving that jurisdiction over the subject matter exists.  *Brown v. Tucci*, No. 12-cv-1769, 2013 WL 2190145 (W.D. Pa. May 20, 2013) (citing *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995)).

A "facial" attack to the court's subject-matter jurisdiction assumes that the allegations of the complaint are true but contends that the pleadings nonetheless fail to present an action within the court's jurisdiction.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  The Third Circuit has explained:

> In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir.2000)) (internal quotation marks omitted).  Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party.

*Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

### B.    Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

    "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court has explained:

> The plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has acted
> unlawfully.  Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

## III.     DISCUSSION

### A.     This Court's Jurisdiction Over the Third-Party Complaint

    Calgon argues that this Court lacks subject-matter jurisdiction because the claims against

it are not for derivative or secondary liability and are thus improper third-party claims. Ashland

and INEOS argue that all their claims are for derivative liability and that, even if some are not,

their complaint is proper if one claim is for derivative liability.

    Under Federal Rule of Civil Procedure 14(a)(1), "[a] defending party may, as third-party

plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part

of the claim against it."  "[F]or a third-party claim to be valid, there must be a basis for liability

between the third-party defendant and the defendant/third-party plaintiff."  *EQT Production Co.

v. Terra Services, LLC*, 179 F Supp. 3d 486, 493 (W.D. Pa. 2016) (citations omitted).  "A defendant

may not bring in a third-party that is solely liable to the plaintiff."  *Id.* (citations omitted).

Federal courts generally exercise supplemental jurisdiction over claims to implead a third-party defendant under Rule 14(a) because they are "so related to claims in the action . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). In addition, once a defendant has stated a claim for derivative liability against the third-party, it may join other claims (e.g., for direct liability) against the third-party under Federal Rule of Civil Procedure 18(a), provided the Court has jurisdiction over those additional claims.

Here, Ashland and INEOS assert a claim for unjust enrichment against Calgon. That claim, as more fully discussed below, is derivative in nature: Calgon is only liable to Ashland and INEOS if Shenango prevails. That claim is unquestionably part of the same case or controversy as the claims asserted by Shenango. The Court therefore has supplemental jurisdiction over the unjust enrichment claim. Likewise, the Court has supplemental jurisdiction over the contractual claims, which are also integrally related to the claims asserted by Shenango.[1]

### B.    Third-Party Beneficiary Claims

Third-Party Plaintiffs assert two claims predicated on their status as third-party beneficiaries of the Calgon Agreement: breach of contract (Count I) and contractual indemnity (Count III). Although the Court has supplemental jurisdiction over Counts I and III, whether Ashland and INEOS have plead facts sufficient to state either claim remains for decision. Each claim under the Calgon Agreement rests on the argument that Ashland and INEOS are the third-party beneficiaries of that agreement (and are therefore entitled to sue under its provisions).

---

[1] In its reply brief, Calgon suggests that the arbitration clause in the Calgon Agreement divests this Court of jurisdiction over claims under that agreement. While an arbitration clause generally prohibits a Court from resolving the merits of claims under the agreement, Calgon's argument conflicts with "the modern view that arbitration agreements do not divest courts of jurisdiction[.]" *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 77 (1st Cir. 2000).

Accordingly, the Court addresses the claims together.  Because Third-Party Plaintiffs are not intended beneficiaries of the Calgon Agreement, both claims fail.[2]

───────────────

[2] As noted above, the Calgon Agreement also includes a broad arbitration clause that requires "any dispute on the application or interpretation" of the Calgon Agreement "be finally settled in accordance with the rules of the American Arbitration Association then obtaining." Agreement § 8.  In its reply, Calgon argues that Third-Party Plaintiffs' claims are subject to this arbitration clause and must be submitted to an arbitrator.  Calgon's argument raises a threshold question: can this Court decide the merits of Calgon's motion to dismiss the claims brought under the Calgon Agreement, or must a resolution of that motion be made by an arbitrator?  The Court is satisfied that it may address at least the narrow issue of whether Ashland and INEOS are in fact third-party beneficiaries of the Calgon Agreement, notwithstanding the arbitration clause in that contract.

Under the Federal Arbitration Act, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."  *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 529 (2019) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).  "[A] nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent."  *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1271 (Pa. Super. 2004) (citation omitted).  "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-A-Center*, 561 U.S. at 68–69.  The reference to the rules of the American Arbitration Association generally constitutes clear and convincing evidence of the parties' intent to delegate gateway questions of arbitrability to an arbitrator.  *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") (collecting cases); *Chesapeake Appalchia, LLC v. Scout Petroleum, LLC*, 809 F3d 746, 763–64 (3d Cir. 2016) (noting this agreement among the circuits but departing on the narrow question of whether an arbitrator or a court must decide the threshold issue of class arbitrability).

On its face, the incorporation of the AAA rules in the Calgon Agreement evinces an intent that the arbitrator decide gateway questions of arbitrability (and, subsequently, the merits of the claims).  However, "just because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory. In order to decide whether arbitration of arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement."  *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 209 (2d Cir. 2005) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995)).  Applying this principle, courts have concluded that it "is for the Court, not an arbitrator, to make a threshold determination" about whether a litigant is a third-party beneficiary subject to the contract, even where gateway questions of arbitrability were otherwise delegated to the arbitrator.  *Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 291 (S.D.N.Y. 2016).  That conclusion is consistent with the principle that "[p]ersons cannot compel arbitration of a disagreement between or among parties who have not

The Pennsylvania Supreme Court has held that a litigant is a third-party beneficiary:

> only where both parties to the contract express an intention to benefit the third party in the contract itself, *unless*, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promise to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promise.

*Scarpitti v. Weborg*, 609 A.2d 147, 150–51 (Pa. 1992) (citations omitted) (emphasis in original). A third party must be an intended, as opposed to incidental, beneficiary to bring a breach of contract action.  *Id.* at 150.  "[I]t is not enough that a contract has the result of benefiting a third party; rather, the third-party beneficiary must be 'within [the promisor's] contemplation at the time the contract was entered into and [the promisor's] liability was intentionally assumed by him in his undertaking."  *Three Rivers Hydroponics, LLC v. Florists' Mut. Ins. Co.*, No. 2:15-cv-00809, 2018 WL 791405, at *3 (W.D. Pa. Feb. 8, 2018) (quoting *PA Energy Vision, LLC v. S. Avis Realty, Inc.*, 120 A.3d 1008, 1015 (Pa. 2015)).

When considering a motion to dismiss, "[w]here the written terms of the contract are not ambiguous and can only be read one way, the court will interpret the contract as a matter of law."  *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994).  Under Pennsylvania law, "[i]n construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished."  *Village Beer & Beverage, Inc. v. Vernon D. Cox & Co., Inc.*, 475 A.2d 117, 121

---

contracted to arbitrate that disagreement between or among themselves."  *Cumberland-Perry Area Vocational Training Sch. Auth. v. Bogar & Bink*, 396 A.2d 433, 435 (Pa. Super. 1978). Accordingly, the Court concludes that it may decide whether Ashland and INEOS are third-party beneficiaries of the Calgon Agreement.

(Pa. Super. 1984).  "In cases of a written contract, the intent of the parties is the writing itself." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006) (citation omitted). "A contract is ambiguous" only where "it is reasonably susceptible of different constructions and capable of being understood in more than one sense."  *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) (citing *Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)).  "[U]nambiguous contracts are interpreted by the court as a matter of law," while "ambiguous writings are interpreted by the finder of fact."  *Ins. Adjustment Bureau*, 905 A.2d at 469.

Ashland and INEOS argue that they are entitled to sue under the Calgon Agreement because they are "others" who own utilities and also "owner[s] of land" as those terms are used in Sections 6 and 7 of the Calgon Agreement.  According to Ashland and INEOS, those terms mean, at a minimum, that the Calgon Agreement is ambiguous as to who is an intended beneficiary of those provisions.  They are therefore entitled to the rights and protections afforded by those provisions, including "reasonable protection" of their utility lines and indemnity for Calgon's failure "to comply with any pertinent rules and regulations published and accepted by the parties hereto."

Ashland and INEOS seize on the undefined terms "others" and "owner[s] of land" used in Sections 6 and 7 without reference to the balance of the agreement.  But Pennsylvania law instructs that courts must "interpret provisions of a contract in light of the context in which they appear." *Khawaja v. RE/MAX Central*, 151 A.3d 626, 633 (Pa. Super. 2016) (citing *Reilly v. City Deposit Bank & Trust Co.*, 185 A. 620, 623 (Pa. 1936)).  Courts are instructed to "adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished."  *Village Beer*, 475 A.2d at 121.  Reading the whole contract, rather than seizing on individual terms out of context, reveals

that the parties did not intend to create rights benefiting third parties, as Ashland and INEOS contend.

In the preamble, the parties expressed their intent "to define the ownership, maintenance, and control of various utility lines . . . involved in their adjoining plaint or facilities . . . ." Agreement at 11.  Consistent with this intent, the remaining provisions of the Calgon Agreement do not create free floating obligations in third-parties; they create a comprehensive set of rights and obligations between the parties in their capacities as landowners and owners of utility lines. For example, Section 3 requires the parties to grant easements to the owners of utility lines. Section 4 permits landowners to relocate utitliy lines at their own expense and requires utility line owners to accept the relocation.  And Section 5 requires a landowner to give notice to the owner of an abandoned above-ground utility line, after which the line's owner must remove the line (unless the landowner purchases it).  Nothing in the agreement indicates that these corresponding rights and obligations were intended to benefit anyone other than the parties to the Calgon Agreement.

Because Ashland and INEOS are not intended beneficiaries under the Calgon Agreement and have not shown other circumstances compelling a recognition of their status as such, their claims for breach of contract and contractual indemnity must fail.  Accordingly, Counts I and III of the Third-Party Complaint will be dismissed to the extent they are based on those agreements.

### C.    Other Contract Claims

In support of Count I of the Third-Party Complaint, Ashland and INEOS also identify several other contracts and agreements that they assert Calgon breached.  First among these, they assert that Calgon is a "successor to USS under the SS Easement and SS Agreement" such that Calgon "assumed USS's rights and obligations under the SS Easement and the SS Agreement." Third-Party Compl. ¶ 43.  That is a legal conclusion and is not entitled to the assumption of truth.

Ashland and INEOS allege no facts showing that Calgon is a "successor to USS under the SS Easement and the SS Agreement" or that Calgon "assumed USS's rights and obligations" under those agreements.

Ashland and INEOS also allege—upon information and belief—that Calgon "operated under the payment-related terms of the SS Easement and SS Agreement." *Id.* ¶ 32.  Even accepting that allegation as true and not conclusory, Calgon's "operation under" the payment-related terms of the SS Easement and SS Agreement does not, without more, indicate that it was bound by (or a "successor to") those agreements.

Finally, Ashland and INEOS allege that—upon information and belief—Calgon "has failed to abide by the terms of . . . other contracts between it and Shenango." *Id.* ¶¶ 49, 52.  But they do not identify those other contracts, explain how Calgon has breached them, or explain why Calgon is liable to Ashland and INEOS under its other contracts with Shenango.  The invocation of unspecified other contracts does not save Count I.

### D.    Unjust Enrichment

Lastly, Ashland and INEOS assert a claim for unjust enrichment against Calgon.  Calgon argues that Ashland and INEOS have failed to establish that any benefit was conferred on Calgon *by them*: according to Calgon, any benefit it has received was conferred on it by Shenango (in the form of uncompensated transportation of Calgon's sewage).  For their part, Ashland and INEOS argue that they will confer a benefit on Calgon if they are held liable to Shenango for Calgon's unpaid sewage fees.  It would be unjust, the argument goes, for them to bear the expense of Calgon's unpaid sewage fees.

"'Unjust Enrichment' is essentially an equitable doctrine." *Mitchell v.* Moore, 729 A.2d 1200, 1203 (Pa. Super. 1999).  To prove unjust enrichment, a plaintiff must show: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3)

acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. 1995). "[A]pplication of the doctrine depends on the particular factual circumstances of the case at issue." *Durst v. Milroy Gen. Contracting, Inc.*, 52 A.3d 357, 360 (Pa. Super. 2012) (quoting *Mitchell*, 729 A.2d at 1203–04). The "focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Schenck*, 666 A.2d at 328. *See also Torchia ex rel. Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. 1985) ("To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'") (quoting *Roman Mosaic & Tile Co. v. Vollrath*, 313 A.2d 305, 307 (Pa. Super. 1973)).

Here, Ashland and INEOS plead that, should Shenango prevail on the underlying claims, they will have conferred a benefit on Calgon by paying Shenango for fees owed by Calgon. This is not, as Calgon argues, a benefit conferred on it by Shenango. The benefit conferred by Ashland and INEOS is not the transportation of sewage; it is the payment of fees associated with the transportation of that sewage. While Shenango may have also conferred a benefit on Calgon by transporting its sewage without receiving full payment, the payment of the fees for that transportation is a separate benefit. Ashland and INEOS seek compensation for the latter. Accordingly, Ashland and INEOS have stated a claim for unjust enrichment against Calgon.

IV.     **CONCLUSION**

For the foregoing reasons, Calgon's Motion to Dismiss First Amended Third-Party Complaint (ECF No. 43) will be granted in part and denied in part.  An appropriate order follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: September 15, 2022

cc: All counsel of record